United States District Court
Southern District of Texas
**ENTERED**
September 11, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RONALD THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00142 |
| | § | |
| TEXAS DEPT OF CRIMINAL JUSTICE, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Ronald Thomas is a Texas inmate appearing *pro se* in this inmate civil rights action. Plaintiff alleges certain policies and practices of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) prohibit him from growing his hair long in accordance with his Native American faith. Plaintiff alleges these policies and practices conflict with his right to practice his Native American faith in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., the First Amendment, and the Due Process Clause of the Fourteenth Amendment. Plaintiff further alleges he has been subjected to various acts of retaliation in connection with growing his hair long and filing grievances.

Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated a claim against TDCJ Director **Bobby Lumpkin** and McConnell Unit

Warden **Elbert G. Holmes** in their official capacities for injunctive relief only in connection with Plaintiff's claims regarding his desire to grow his hair long.[1]

The undersigned further recommends Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment.  The undersigned also recommends the Court **DISMISS** Plaintiff's excessive force claims *without prejudice*.  Lastly, the undersigned recommends Plaintiff's remaining claims be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned will order service on Defendants Lumpkin and Holmes by separate order.

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1]It is likely that only one defendant is a necessary party concerning Plaintiff's claims for injunctive relief.  However, at this early stage of the proceedings, it is uncertain who the appropriate person is to provide injunctive relief were Plaintiff to prevail. Therefore, the undersigned will order service on both Director Lumpkin and Warden Holmes.

## II.   PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A.   Procedural Background

Plaintiff is a prisoner assigned to the TDCJ McConnell Unit in Beeville, Texas. Plaintiff's primary complaint is that he is being prohibited from growing his hair long in accordance with his Native American faith.

Plaintiff alleges the TDCJ grooming policy and its application to him violate RLUIPA, the First Amendment, and the Due Process Clause of the Fourteenth Amendment.   Plaintiff further alleges claims of retaliation that allegedly occurred in connection with Plaintiff's hair not being in compliance with TDCJ policy and his filing grievances in connection with this dispute.

The Court received Plaintiff's original complaint on May 25, 2023.  (D.E. 1).  On June 12, 2023, Plaintiff filed a motion to amend his complaint to correct or include the full names of some of the defendants.  (D.E. 12).   The undersigned granted Plaintiff's motion to amend on June 13, 2023.  (D.E. 13).  Plaintiff paid the filing fee on July 12, 2023. On July 5, 2023, a *Spears*[2] hearing was held where Plaintiff was given an opportunity to explain his claims. On July 6, 2023, Plaintiff was ordered to file an amended complaint. (D.E. 14).  The Order cautioned Plaintiff:

> Construing Plaintiff's original complaint liberally, Plaintiff has raised a claim that the TDCJ grooming policy and/or the interpretation and application of the policy to him interferes with his ability to grow his hair long in accordance with his Native American faith and therefore violates the

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Religious Land Use and Institutionalized Persons Act (RLUIPA), the First Amendment, and his right to Equal Protection.

Plaintiff's remaining allegations are more difficult to succinctly explain, identify or understand. It appears to the undersigned that Plaintiff has persisted in growing his hair long which has resulted in prison disciplinary cases being brought against him, alleged retaliation for filing grievances, instances of alleged excessive force, unfair disciplinary proceedings, and other problems. Plaintiff names nineteen different defendants under a variety of potential claims arising on different dates and occasions. Many of these claims should be dismissed on screening for failing to state a claim, being frivolous, having an insufficient factual explanation, or for other reasons.

The Court received Plaintiff's Amended Complaint on July 27, 2023.  (D.E. 15).  The Court also received Plaintiff's prisoner civil rights complaint form on July 31, 2023.  (D.E. 16).  Both documents were signed and dated by Plaintiff on July 24, 2023.  While it is unclear why the Court received these documents on different dates, the undersigned ordered Plaintiff to complete an inmate complaint form and also allowed Plaintiff to attach additional pages to the form.  (D.E. 14).  Therefore, both documents (D.E. 15 and D.E. 16) shall be construed to constitute Plaintiff's Amended Complaint and Plaintiff's live pleading.  Plaintiff has named the following defendants in his Amended Complaint:

1. The Texas Department of Criminal Justice;
2. TDCJ Director Bobby Lumpkin;
3. Warden Candice G. Flannel;
4. Placido Samaniego;
5. Captain Dorian J. Garza;
6. Lt. Adan A. Cavazos;
7. Lt. Jose R. Aleman;
8. Sgt. Ildefonso M. Barrera Jr.;
9. Sgt. Brenda Quintanilla;
10. Cpt. Tommy L. West;
11. McConnell Warden Elbert G. Holmes; and
12. TDCJ Office of the Inspector General.

**B.      Plaintiff's Allegations**

**1.      Grooming Claims under RLUIPA, the First Amendment and Equal Protection**

The following representations were made either in Plaintiff's amended complaint (D.E. 15 and D.E. 16) or at the *Spears* hearing :

Plaintiff was 35 years old at the time of the *Spears* hearing on July 5, 2023.  Plaintiff has been in TDCJ custody since approximately 2015. He is serving a life sentence.  Plaintiff is a black male.  Plaintiff's Native American faith derives from his great grandmother who was a full member of the Blackfoot Tribe of East Texas.  Plaintiff learned of his Native American Heritage later in life but came to realize many Native American traditions were part of his childhood, upbringing, and family customs.  Plaintiff researched this history and began to incorporate Native American traditions and religion into his adult life.  Plaintiff is identified as a Buddhist by TDCJ on his travel card, but alleges he practices his Native American faith.  Plaintiff believes his energy or spirit is real and is embodied in his hair. When his hair grows long, he is filled with energy.

Plaintiff's hair naturally grows curly. Over time, Plaintiff's curly hair naturally develops dreadlocks. Dreadlocks are rope-like strands of hair that can be formed by matting or braiding.  Plaintiff alleges he has tried combing and brushing, but there is nothing he can do to stop his hair from naturally developing dreadlocks. The current TDCJ grooming policy prohibits inmates from wearing dreadlocks.  Plaintiff alleges he is physically incapable of growing his hair straight and in compliance with the current TDCJ grooming

policy which provides certain religious accommodations for Native American and other inmates whose religious beliefs include wearing long hair.  Plaintiff's application for exemptions have been denied by TDCJ personnel.  Plaintiff alleges the TDCJ grooming policy and its application to him substantially interfere with his ability to practice his Native American faith in violation of RLUIPA and the First Amendment.  He further alleges he is being treated differently than other inmates who are not black who are allowed to wear their hair long.  Plaintiff alleges this disparate treatment violates the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff has had to choose between growing his hair long and facing TDCJ discipline and other problems or cutting his hair.  Plaintiff has chosen to grow his hair long. Plaintiff alleges numerous instances of retaliation against the defendants.  These instances of alleged retaliation are summarized below and are grouped as alleged by Plaintiff in his Amended Complaint.

### C.    Individual Defendants

#### 1.    Sergeant Barrera and Lt. Cavazos

On December 29, 2022, Sgt. Barrera refused Plaintiff entry into the unit dining facility because Plaintiff's hair had "twisties" and violated the grooming policy. However, after talking with Plaintiff about the situation, Sgt. Barrera allowed Plaintiff to enter. Plaintiff believed the interaction was unnecessary.  (D.E. 15, Page 6).

On February 7, 2023, Sgt. Barrera again refused Plaintiff entry into the dining facility due to Plaintiff's hair style. This interaction resulted in Plaintiff being placed in

hand restraints and receiving a disciplinary case for not complying with orders.  Lt. Cavazos was present during the incident.  (D.E. 15, Pages 7-10).

On February 8, 2023, Plaintiff was again detained by Sgt. Barrera and received another disciplinary case.  The facts of the incident are not clear, but the incident appears to have occurred as Plaintiff was entering the dining facility.  Lt. Cavazos was again present during the incident.  Plaintiff was later placed in segregated or disciplinary housing while the case was being investigated.  (D.E. 15, Pages 7-10).

A similar incident occurred on May 5, 2023, where it appears Plaintiff was denied access to the dining facility and laundry services.  He appears to again have been detained and received another disciplinary case.  (D.E. 15, Pages 7-10).

### 2.    Lt. Aleman and Warden Flannel

Plaintiff alleges that on February 10, 2023, Lt. Aleman attempted to coerce Plaintiff to waive certain notice requirements in connection with a prison disciplinary case against Plaintiff.  Plaintiff further alleges Aleman retaliated against him by not allowing Plaintiff to submit evidence at the disciplinary proceeding and otherwise failing to provide Plaintiff with a fair hearing.   Plaintiff also alleges Aleman used a racial slur during those proceedings.  (D.E. 15, Pages 10-11).

Plaintiff alleges he met with Warden Flannel about his discriminatory treatment and she failed to take any action.  Plaintiff further alleges Warden Flannel retaliated against Plaintiff by telling him she was keeping track of his grooming violations and that she would have to place him in a more restrictive custody classification.  Plaintiff alleges on April 27,

2023, he was again denied access into the dining facility, presumably due to Plaintiff's hair not being in compliance with the grooming policy. Plaintiff attributes this denial of entry into the dining facility to Warden Flannel. (D.E. 15, Pages 10-14).

### 3. Cpt. West and Sgt. Quintanilla

On May 8, 2023, Cpt. West met with Plaintiff to investigate a complaint by Plaintiff's grandmother regarding Plaintiff's treatment in TDCJ. Plaintiff alleges Cpt. West failed to allow Plaintiff the opportunity to provide a sworn statement. Plaintiff further alleges Cpt. West directed Sgt. Quintanilla to fabricate an offense report regarding Plaintiff's grooming. Plaintiff further alleges Cpt. West conspired with the other defendants to retaliate against Plaintiff. One act of alleged retaliation involved Cpt. West not allowing Plaintiff or members of his assigned housing area to return to their housing unit after breakfast. Plaintiff alleges this deprived him of sleep. (D.E. 15, Pages 14-16).

### 4. Warden Holmes, Warden Samaniego, the TDCJ Office of the Inspector General and Cpt. Garza

Plaintiff alleges these defendants were put on notice of the misconduct by each official named in his grievances. Plaintiff alleges the investigation of these grievances was intentionally inadequate. Samaniego is alleged to have been a grievance officer assigned to review some of Plaintiff's grievances. While not stated clearly, it appears Plaintiff alleges Warden Holmes, the TDCJ Office of the Inspector General and Cpt. Garza failed to intervene on Plaintiff's behalf to stop the retaliation. (D.E. 15, Pages 16-17).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis,* the Court shall evaluate the complaint and dismiss it without service of process, if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts

or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   The First Amendment, RLUIPA, and Equal Protection

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend. I. The United States Supreme Court has held prisoners retain their First Amendment right, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish there is a

legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In *Turner v. Safley*, the Supreme Court set forth four factors a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. *Turner*, 482 U.S. at 89-90; *see also Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999).

The RLUPIA "poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004). Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc.

RLUIPA § 3 addresses restrictions on the religious exercise of institutionalized persons. 42 U.S.C. § 2000cc-1, § 3. This section provides that "[n]o government shall

impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering" that interest. RLUPIA does not provide a cause of action for individual capacity claims. *Jones v. Alfred*, 353 F. App'x 949, 951 (5th Cir. 2009).

The Supreme Court held that an Arkansas policy preventing a Muslim prisoner from growing a half-inch beard in accordance with his religious beliefs violated RLUIPA. *Holt v. Hobbs*, 135 S. Ct. 853 (2105). Relying on *Holt*, the Fifth Circuit Court of Appeals remanded a RLUIPA claim brought by a Native American inmate with regard to the TDCJ's kouplock-grooming policy. *Davis v. Davis*, 826 F.3d 258, 267-72 (5th Cir. 2016).

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). Thus, to establish an equal protection claim, a plaintiff must first demonstrate "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted). An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges he has been singled out as a so-called "class of one." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) (per curiam). A plaintiff makes a "class of one" claim when he

alleges he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment.  *Id.* (citing *Olech*, 528 U.S. at 564).

Plaintiff's testimony at the *Spears* hearing reflects his sincere belief in growing his hair long in accordance with his native American faith.  He claims the TDCJ's grooming policy places a substantial burden on his ability to practice his religion.   Plaintiff's allegations are sufficient at this stage to warrant further factual development of both his RLUIPA and First Amendment claims.  Plaintiff has further alleged a plausible equal protection claim.  He alleges other TDCJ inmates who practice a Native American religion are allowed to grow their hair long.  Plaintiff alleges that because he is black and naturally grows an afro he is prohibited from growing his hair long under the current TDCJ grooming policy.  Whether Plaintiff is alleging class based discrimination or a class-of-one need not be resolved at this stage.  Plaintiff has clearly alleged a plausible claim of discrimination.

For purposes of injunctive relief, it is unclear whether Director Lumpkin or McConnell Unit Warden Holmes would be the appropriate official to provide the requested injunctive relief with respect to Plaintiff's RLUIPA, First Amendment, and Equal Protection claims.  Therefore, the undersigned recommends retaining these claims against both Director Lumpkin and Warden Holmes in their official capacities.[3]

Additionally, to the extent Plaintiff's RLUIPA, First Amendment, and Equal Protection claims could be construed as claims against the correctional officer defendants

---

[3]In their responsive pleadings, Defendants Lumpkin and Holmes may clarify with the Court who would be the appropriate official to provide any prospective injunctive relief should Plaintiff prevail on either his First Amendment, RLUIPA, or Equal Protection Claims.

in their individual capacity, the undersigned recommends those claims be dismissed because the actions of these defendants are attributable to the TDCJ grooming policy. Plaintiff's allegations of discriminatory intent by the individual defendants are conclusory.

### B.     Plaintiff's Retaliation Claims

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  The purpose of allowing retaliation claims under § 1983 is to ensure prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

"Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff has alleged Defendants Barrera, Cavazos, Aleman, Flannel, West, and Quintanilla retaliated against him in a variety of ways, from denying Plaintiff access to the dining facility, to writing false disciplinary cases against him, detaining and placing Plaintiff in disciplinary custody without cause, interfering with Plaintiff's ability to present a defense at disciplinary proceedings and in other ways. Plaintiff's claims of retaliation are entirely conclusory. Plaintiff's claims all involve the TDCJ grooming policy which Plaintiff characterizes as an anti-dreadlock policy. While Plaintiff construes the correctional officer defendants' conduct as retaliatory, Plaintiff has not stated sufficient facts to give rise to any claim for retaliation. Plaintiff's allegations do not create an inference that the correctional officers' conduct was the result of retaliation or discrimination rather than enforcing the TDCJ grooming policy.

While Plaintiff's allegations indicate he has suffered a variety of adverse acts from the correctional officer defendants, he essentially acknowledges his refusal to comply with the TDCJ's grooming policy constituted the underlying justification for their actions. In other words, Plaintiff cannot show that, but for the correctional officer defendants'

retaliatory motives, the adverse actions would not have occurred.  All of the adverse actions occurred in the wake of Plaintiff's refusal to follow the TDCJ's grooming policy.  Plaintiff has not alleged any of the disciplinary sanctions imposed against him have been overturned on appeal or otherwise reversed.  Even when accepting Plaintiff's allegations as true, his retaliation claims are unsustainable because the correctional officer defendants' conduct cannot be attributable solely to a retaliatory motive.   Accordingly, it is respectfully recommended that these claims be dismissed.

### C.      Grievance Investigations and Prison Disciplinary Proceedings

Plaintiff alleges his grievances were not properly handled or investigated.  Plaintiff also alleges he was subjected to unfair prison disciplinary proceedings.  Plaintiff characterizes these as instances of retaliation which have been addressed above.  However, to the extent Plaintiff is also attempting to bring these as separate claims, such claims should be dismissed.

Plaintiff has no federally protected right to have his grievances investigated.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor). Further, Plaintiff's claims challenging the disciplinary cases against him are barred by the doctrine enunciated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The *Heck* Court held that "in

order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck*, 512 U.S. at 486-87.  The Heck doctrine also operates to bar prisoners from challenging the punishment imposed by a disciplinary proceeding through a § 1983 action.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983").  Plaintiff has not alleged the reversal of any prison disciplinary case about which he complains.

### D.      Supervisors and the Office of the Inspector General

Plaintiff names Warden Holmes, Warden Samaniego, and the TDCJ Office of the Inspector General as defendants.  (D.E. 15, Pages 16-17). Plaintiff alleges these defendants were put on notice of the other defendants' misconduct in the grievances he submitted. While Plaintiff alleges these defendants may have been involved in reviewing or investigating his grievances, Plaintiff does not allege these defendants were otherwise personally involved. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987).  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  Plaintiff has failed to allege a viable claim against Warden Holmes

or Warden Samaniego in their individual capacities or against the TDCJ Office of the Inspector General.

### E.     Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues each of the individual defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

Plaintiff also seeks to sue the TDCJ for both monetary damages and injunctive relief.  However, the TDCJ enjoys Eleventh Amendment immunity from suits brought

pursuant to § 1983 regardless of the type of relief sought. *See Flaming v. University of Texas Medical Branch*, No. H-15-2222, 2016 WL 727941, *5 (S.D. Tex. Feb. 24, 2016) (citing *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1988) and *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984)). Accordingly, it is respectfully recommended that Plaintiff's § 1983 claims against the TDCJ be dismissed as barred by the Eleventh Amendment.[4]

### F.    Excessive Force

Plaintiff has not clearly alleged a separate claim for excessive force. However, his complaint could be construed as raising excessive force claims. Plaintiff alleges two instances in which officers placed him in handcuffs. One incident occurred on February 7, 2023, where an unnamed supervisor placed Plaintiff in restraints. (D.E. 15, Page 7). In the second incident, on February 8, 2023, Lt. Cavazos is also alleged to have placed Plaintiff in hand restraints. Plaintiff alleges the cuffs were put on excessively tight and caused swelling, bruising and extreme pain.

Convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force. *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1086); *Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1993). In considering excessive force claims, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or

---

[4] Additionally, because either Director Lumpkin or Warden Holmes would be capable of providing the injunctive relief request should Plaintiff prevail, TDCJ is an unnecessary party.

restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Plaintiff has not alleged sufficient facts to raise a plausible claim that the officers used force in a malicious or sadistic manner.  Plaintiff was cautioned that many of his claims were subject to being dismissed on screening for failing to state a claim, being frivolous, having an insufficient factual explanation or for other reasons.  (D.E. 14).  Plaintiff has been allowed to amend his complaint twice.  (D.E. 13 and D.E. 14).  Leave to further amend in this action is not warranted.

However, the undersigned recommends dismissal of Plaintiff's excessive force claims *without prejudice* for several reasons.  First, it is unclear if Plaintiff is attempting to raise claims for excessive force in this action.  Second, Plaintiff's excessive force claims could be plausible if Plaintiff alleged additional facts.  Third, even if Plaintiff were to plead a viable excessive force claim, such claims are more appropriately brought in a separate action.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").  *See also* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed).  The undersigned has recommended Plaintiff's claims regarding the TDCJ grooming policy go forward. The excessive force claims are sufficiently different to warrant being brought in separate actions.  Finally, the relevant facts that may give rise to claims for excessive force

occurred on February 7th and 8th, 2023, giving Plaintiff sufficient time to pursues those claims in a separate action before the limitations period expires.

Therefore, the undersigned recommends the Court dismiss Plaintiff's excessive force claims without prejudice.

### G.   Claims Not Specifically Addressed in this Memorandum

To ensure justice and access to the courts, courts interpret pleadings of *pro se* litigants liberally.  *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)).  *Pro se* actions will not be dismissed based on technical pleading defects and should be construed to ensure such claims are given fair and meaningful consideration despite the unrepresented litigant's unfamiliarity with the law.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*Pro se* parties are normally accorded more leniency in the construction of their pleadings).

The undersigned has liberally construed Plaintiff's pleadings to give his claims fair and meaningful consideration.  The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner consistent with providing appropriate leniency to pro se litigants while at the same time requiring compliance with applicable pleading and screening standards.  To the extent Plaintiff is attempting to raise a claim not specifically addressed by the undersigned in this Memorandum and Recommendation, Plaintiff has failed to state such claim with sufficient factual detail or clarity to allow the claim to be identified or analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Again, Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Twombly*, 550 U.S. at 556.  Further, the factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555.  Therefore, Plaintiff is advised that any claim not addressed in this Memorandum and Recommendation is not currently before this Court because Plaintiff has failed to allege sufficient facts or state such claims clearly.

## V.     CONCLUSION

For purposes of screening, Plaintiff has stated a claim against TDCJ Director **Bobby Lumpkin** and McConnell Unit Warden **Elbert G. Holmes** in their official capacities for injunctive relief in connection with Plaintiff's claims regarding his desire to grow his hair long.

The undersigned further recommends that Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment. The undersigned further recommends the Court **DISMISS without prejudice** Plaintiff's excessive force claims. Lastly, the undersigned recommends Plaintiff's remaining claims be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted on September 11, 2023.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).